IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| REBEKAH TAYLOR-FAILOR, individually and on behalf of the Class of Prospective Hawaii County employees and the Class of Previous Applicants for Hawaii County Employment,<br><br>Plaintiff,<br><br>vs.<br><br>COUNTY OF HAWAII, a municipal corporation,<br><br>Defendant. | Civil No. 15-00070 DKW-KSC<br><br>**ORDER GRANTING MOTION FOR TEMPORARY RESTRAINING ORDER** |

**ORDER GRANTING MOTION FOR**
**TEMPORARY RESTRAINING ORDER**

**INTRODUCTION**

Rebekah Taylor-Failor seeks a temporary restraining order prohibiting the County of Hawai'i from requiring her to submit to a urinalysis before she begins working for the County as a Legal Clerk II on March 16, 2015. Because the County has failed to establish the requisite special need to conduct a suspicionless search of Taylor-Failor, an applicant for what the County acknowledges is a non-safety-sensitive position, the Court preliminarily concludes that: the urinalysis

1

would violate Taylor-Failor's Fourth Amendment rights; Taylor-Failor has demonstrated a likelihood of irreparable harm without the relief requested; the balance of equities tips in her favor; and the issuance of an injunction is in the public interest. Accordingly, Taylor-Failor's Motion for Temporary Restraining Order is GRANTED.

## BACKGROUND

Taylor-Failor applied for and was offered a Legal Clerk II position with the County's Office of the Prosecuting Attorney. After accepting the position, County personnel informed her that she would need to undergo a medical examination prior to her March 16, 2015 start date. As a result, on January 30, 2015, the County sent Taylor-Failor a medical examination report to be completed by a physician and a web link to the County's Pre-Entry Medical Examination Guide. Declaration of Tammylyn Kaniho ¶¶ 5-6; Declaration of Rebekah Taylor-Failor ¶¶ 4-5 & Exs. 2-3.

Taylor-Failor did not want to provide the detailed medical information mandated by the County, but was "afraid that if [she] didn't, [she] would lose the job." Taylor-Failor Decl. ¶ 7. Because she resided in Oregon at the time of her hiring, Taylor-Failor went to her own physician to have the medical examination conducted. On February 14, 2015, she emailed the medical examination report to Tammylyn Kaniho, Private Secretary to the Prosecuting Attorney, who also serves

as the designated Human Resources representative for the Office of the Prosecuting Attorney. Taylor-Failor's report, however, did not include any lab work or urinalysis. Taylor-Failor Decl. ¶¶ 8-10; Kaniho Decl. ¶¶ 2-8. Accordingly, Kaniho set up an appointment for Taylor-Failor with County physician Walter Wang, M.D., for March 10, 2015 and instructed Taylor-Failor that she would need to provide a urine sample at that time. Taylor-Failor Decl. ¶ 10; Kaniho Decl. ¶ 10. Taylor-Failor moved from Oregon to Kailua-Kona on March 5, 2015 in order to take the Legal Clerk II position. Taylor-Failor Decl. ¶ 12. According to Taylor-Failor, the County "made it clear to me that the medical screening, and the urinalysis, [would be] required before I [could] start my job." Taylor-Failor Decl. ¶ 11.

The urinalysis does not test for "prescription or illegal drugs, or for alcohol." Declaration of Walter Wang ¶ 11. Instead, according to the County, the urinalysis is intended to "test for protein, sugar, red and white blood cells, specific gravity, nitrates, ketones, and bilirubin[,]" and "is medically reasonable and necessary in order . . . to formulate an opinion as to an individual's overall physical health." Wang Decl. ¶¶ 8-9. According to Dr. Wang, the "sole purpose of the test is to provide the County with an accurate assessment of the pre-employment patients' general health and ability to perform in the appropriate physical effort group." Wang Decl. ¶ 12.

Gabriella Cabanas, a County Human Resources Manager, explains that pre-entry medical examinations are required of all County applicants after a job offer has been extended and accepted, but prior to entry into a civil service position. "The purpose of the pre-entry medical examination is to review the applicant's medical history and current health to ensure that persons seeking civil service employment meet the health and physical standards necessary to perform the essential job duties of the position, without or without reasonable accommodation, and without posing a direct threat to the health or safety of the person or others." Cabanas Decl. ¶ 6. According to Cabanas, if Taylor-Failor "refused to complete all of the answers on the medical questionnaire and the County physician required this information, the County would likely not hire [her]." Cabanas Decl. ¶ 14. On March 9, 2015, Taylor-Failor filed the instant motion for temporary restraining order seeking to begin work without submitting to the County's urinalysis.

## STANDARD OF REVIEW

The standard for issuing a temporary restraining order is identical to that for issuing a preliminary injunction. *See, e.g., Hawaii v. Gannett Pac. Corp.*, 99 F. Supp. 2d 1241, 1247 (D. Haw.1999); *cf. Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (observing that an analysis of a

preliminary injunction is "substantially identical" to an analysis of a temporary restraining order).

"A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'" *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam ) (citation omitted)); *see also Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) (citation omitted) ("A preliminary injunction is an extraordinary remedy never awarded as a matter of right.").

A plaintiff seeking a preliminary injunction must show:

> [1] that he is likely to succeed on the merits,
> [2] that he is likely to suffer irreparable harm in the absence of preliminary relief,
> [3] that the balance of equities tips in his favor, and
> [4] that an injunction is in the public interest.

*Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1289 (9th Cir. 2013) (quoting *Winter*, 555 U.S. at 20). "[I]f a plaintiff can only show that there are 'serious questions going to the merits'—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the 'balance of hardships tips *sharply* in the plaintiff's favor,' and the other two *Winter* factors are satisfied." *Id.* at 1291 (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d

1127, 1135 (9th Cir. 2011) (emphasis added by *Shell Offshore*)). "The elements . . . must be balanced, so that a stronger showing of one element may offset a weaker showing of another." *Lopez*, 680 F.3d at 1072. Regardless of which standard applies, the movant always "has the burden of proof on each element of the test." *Maloney v. Ryan*, 2013 WL 3945921, at *3 (D. Ariz. July 31, 2013); *see Nance v. Miser*, 2012 WL 6674404, at *1 (D. Ariz. Dec. 20, 2012) (citing *Envtl. Council of Sacramento v. Slater*, 184 F. Supp. 2d 1016, 1027 (E.D. Cal. 2000), citing in turn, *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1203 (9th Cir. 1980)).

## DISCUSSION

### I. Likelihood of Success

The Court addresses Taylor-Failor's 42 U.S.C. § 1983 Fourth Amendment challenge to the County's urinalysis requirement as applied to her – *i.e.*, an "as-applied" rather than a "facial" challenge to the County's action. *See* Pl's Reply at 10 n.2; *United States v. Salerno,* 481 U.S. 739, 745 (1987) (A party asserting a facial challenge must show that "no set of circumstances exists under which the [policy] would be valid."); *Hoye v. City of Oakland*, 653 F.3d 835, 857 (9th Cir. 2011) ("A paradigmatic as-applied attack, by contrast, challenges only one of the rules in a statute, a subset of the statute's applications, or the application of the

statute to a specific factual circumstance."); *Legal Aid Serv. of Oregon v. Legal Services Corp.*, 608 F.3d 1084, 1096 (9th Cir. 2010) ("Facial and as-applied challenges differ in the extent to which the invalidity of a statute need be demonstrated." (quotation omitted)).

There is no dispute that a medical examination – including urinalysis – constitutes a "search" implicating the Fourth Amendment. *Yin v. State of Cal.*, 95 F.3d 864, 870 (9th Cir. 1996) ("In today's world, a medical examination that does not include either a blood test or urinalysis would be unusual. Nonetheless, any such medical examination would still implicate the Fourth Amendment."); *see also Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. 602, 616-17 (1989) (explaining that the collection and testing of urine is a search, which "intrudes upon expectations of privacy that society has long recognized as reasonable"). Accordingly, the Court must determine whether the County's urinalysis mandate "fit[s] within the closely guarded category of constitutionally permissible suspicionless searches." *Chandler v. Miller*, 520 U.S. 305, 309 (1997).

In order to pass constitutional muster, the County has the burden of demonstrating a "special need" to conduct suspicionless searches of its prospective employees. *See Chandler*, 520 U.S. at 318. Courts evaluate "special need" using a two-step inquiry. First, courts examine whether the search serves a "special

governmental need" beyond crime detection.  *Nat'l Treasury Employees Union v. Von Raab*, 489 U.S. 656, 665-66 (1989).  Then, "[o]nly if the government is able to make a showing of substantial special needs will the court thereafter 'undertake a context-specific inquiry, examining closely the competing private and public interests advanced by the parties,' to determine the reasonableness of the search." *Lebron v. Sec'y, Fla. Dept. of Children & Families*, 710 F.3d 1202, 1207 (11th Cir. 2013) (citing *Chandler*, 520 U.S. at 314); *Von Raab*, 489 U.S. at 665-66.  The "permissibility of a particular search is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests."  *Skinner*, 489 U.S. at 619 (citation omitted).

The County proffers the following explanation of its "special need" –

> [its] interest in requiring prospective employees to undergo a pre-employment medical exam is based on the need to determine the prospective employee's (1) health and physical ability to carry out the essential job duties of their civil service position (with or without reasonable accommodation) and (2) ability to carry out the essential job duties without posing a direct threat to the health or safety of the prospective employee and/or others. . . .  Thus the County has a legitimate need in requiring prospective employees to undergo medical examinations (to include urinalysis) as a means of determining whether a person is medically able to perform the essential duties of the job that he or she has been offered a position for.

County Opp. at 7.

Taylor-Failor was hired for a "Legal Clerk II" position with the Office of the Prosecuting Attorney. The Legal Clerk II job description sets forth the following "duties of the position":

> 1. Logs and distributes incoming cases, correspondence and documents after review and evaluation. Prepares cases for review by attorneys. Files and maintains cases according to established guidelines and follows through on matters requiring attorney's attention. Assembles cases for attorneys in preparation for court calendars. Coordinates schedules with courts, law-enforcement agencies and other personnel and individuals. Enters, updates and retrieves data from Prosecutor's case tracking system; conducts criminal history checks using the Criminal Justice Information System and other criminal justice databases. Reproduces documents and discovery material, redacting specific information as necessary.
>
> 2. Composes and types on a word processor in rough draft and/or in final form, material involving a wide variety of legal words and phrases, including correspondence, complaints, warrants of arrest, motions, stipulations, notices, declarations, and orders following legal requirements and policy. Also types from rough drafts, memoranda, petitions, briefs, and other legal documents into proper final form verifying and checking data from source documents. Issue subpoenas to civilian and law-enforcement witnesses and cancel them as necessary. Executes assignments in accordance with general instructions and with minimum supervision.
>
> 3. Answers telephone and takes/relays messages/calls and responds to inquiries. Greets callers/visitors; provide assistance and/or direct them to proper persons or agency. Work closely with courts, law-enforcement agencies and

> other personnel. Supervises and may train Clerk IIIs, and
> Clerk IIs, as well as temporary employees/volunteers.
> Other related work as required.

Ex. 1 to Taylor-Failor Decl. (Position Description Form).

The "physical effort group" for the Legal Clerk II position is defined as "light," and "[p]ersons seeking appointment to positions in this class must meet the health and physical condition standards deemed necessary and proper to perform the essential functions of the job with or without reasonable accommodations." *Id.* The County makes no assertion that Taylor-Failor's position as a Legal Clerk II is a safety-sensitive job or one that requires a particular level of fitness. *See Lanier v. City of Woodburn,* 518 F.3d 1147, 1151-52 (9th Cir. 2008) ("Jobs are considered safety-sensitive if they involve work that may pose a great danger to the public, such as the operation of railway cars; the armed interdiction of illegal drugs; work in a nuclear power facility; work involving matters of national security; work involving the operation of natural gas and liquified natural gas pipelines; work in the aviation industry; and work involving the operation of dangerous instrumentalities, such as trucks that weigh more than 26,000 pounds, that are used to transport hazardous materials, or that carry more than fourteen passengers at a time[.]") (citations omitted).

Although "the urinalyses conducted by County physicians are intended and used to measure general overall health," County Opp. at 7-8, the County fails to articulate how such invasive tests are "directly related to the County's interest in ensuring that prospective employees are medically able to perform their essential job duties." *Id.* at 8. Put another way, the County has proffered no explanation as to why it is entitled to search Taylor-Failor's urine before she may begin employment in her light duty, clerical, non-safety-sensitive position. The County's desire to measure a prospective employee's general health is certainly *a* need (albeit a paternalistic one). But equally certain, it is not a *special* need.

The County appears to believe it critical that its urinalysis will not include a drug screen. County Opp. at 3-5. The right invaded, however, is no different, regardless of the paces through which the County intends to put the urine it collects. In fact, there are numerous other measurables that the County acknowledges it wishes to study that are at least as invasive as a drug screen would be and that go well beyond what is reasonable for a prospective employer to evaluate in the name of "general overall health" of its Legal Clerk IIs.[1] *See Skinner*, 489 U.S. at 617. Indeed, if the County's justification was to be given credence, it is difficult to

---

[1] As but one example, it is difficult to discern how running screens that would reveal liver disease relates to a person's ability to operate a copier or word processor, answer the phone, or greet visitors, functions expected of a Legal Clerk II.

envision any Fourth Amendment challenge that the County would not be able to overcome.

The County having failed to articulate a *special* need to subject Taylor-Failor to mandatory urinalysis, the Court finds that Taylor-Failor is likely to succeed on her as-applied challenge under the Fourth Amendment.[2]

## II. **Irreparable Harm**

In order to obtain preliminary relief, a plaintiff must establish that he or she is facing imminent irreparable harm. *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) ("To seek injunctive relief, a plaintiff must show that he is under threat of suffering injury in fact that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical; it must be fairly traceable to the challenged action of the defendant; and it must be likely that a favorable judicial decision will prevent or redress the injury." (citation and internal quotation marks omitted)). "[A]n alleged constitutional infringement will often alone constitute irreparable harm." *Monterey Mech. Co. v. Wilson*, 125 F.3d 702, 715 (9th Cir. 1997) (citation and quotation marks omitted); *see also Nelson v. NASA*, 530 F.3d 865, 882 (9th Cir. 2008) ("Unlike monetary injuries, constitutional violations cannot

---

[2]For this reason, the Court does not address the merits of Taylor-Failor's other claims under federal and state law at this preliminary stage, nor does the Court find it necessary to reach the second prong of the special needs inquiry, involving the balancing of private and public interests.

be adequately remedied through damages and therefore generally constitute irreparable harm."), reversed on other grounds, 131 S.Ct. 746 (2011).

Taylor-Failor faces the imminent threat of being required to submit to urinalysis in order to begin work on her scheduled start date of March 16, 2015. The County candidly admits that her failure to do so will likely result in the loss of the employment opportunity that she relocated from Oregon to Kailua-Kona in order to secure. The Court preliminarily concludes that the urinalysis would violate Taylor-Failor's Fourth Amendment rights. Consequently, she has met her burden of demonstrating a likelihood of irreparable harm without the relief requested.

## III. Remaining Factors

"To determine which way the balance of the hardships tips, a court must identify the possible harm caused by the preliminary injunction against the possibility of the harm caused by not issuing it." *Univ. of Hawai'i Prof'l Assembly v. Cayetano*, 183 F.3d 1096, 1108 (9th Cir. 1999). Without a temporary restraining order, Taylor-Failor will suffer constitutional violations or the loss of her employment, which outweighs the harm to the County if preliminary relief is granted. Even the County does not contest this factor.

With respect to the public interest inquiry, the Court primarily considers the impact on non-parties rather than parties. *Am. Promotional Events, Inc.-Nw. v. City*

*& Cnty. of Honolulu*, 796 F.Supp.2d 1261, 1284–85 (D. Haw. 2011). While the public has a legitimate interest in civil service employment requirements, the public has a stronger interest in ensuring that the County enforces its employment requirements in a constitutional manner. Employment requirements cannot stand where they violate rights of a constitutional dimension. Once again, the County does not contest this factor either.

For purposes of the instant motion, Taylor-Failor sufficiently demonstrates that the balance of hardships tips in her favor and that a temporary restraining order is in the public interest.

## IV. Posting of Security Not Required

"Rule 65(c) invests the district court 'with discretion as to the amount of security required, *if any*.'" *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (quoting *Barahona-Gomez v. Reno*, 167 F.3d 1228, 1237 (9th Cir. 1999)). Taylor-Failor asks that no security be required upon issuance of this temporary restraining order. The County has not opposed the request. A district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining its conduct. *See id.* Under the circumstances, because this is such a case, and because the rights implicated are constitutional and involve the public interest, the Court finds that no security is

required.  *See Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113, 1126 (9th Cir. 2005) (recognizing that no bond or a nominal bond may be appropriate in cases involving the public interest); *Booth v. McManaman*, 830 F. Supp. 2d 1037, 1045 (D. Haw. 2011) ("In the present case, there is no realistic likelihood that Defendant will be harmed by an order requiring compliance with federal laws that [Department of Human Services, State of Hawai] is already obligated to follow.  Further, Plaintiffs are individuals of limited financial means and there is a significant public interest underlying this action.  In light of these circumstances, the Court exercises its discretion to waive the bond requirement under Rule 65(c).").

## **CONCLUSION**

On the basis of the foregoing, Plaintiff Taylor-Failor's Motion for Temporary Restraining Order is HEREBY GRANTED.  The Court orders that the County of Hawaii shall allow Taylor-Failor to begin work as scheduled on Monday, March 16, 2015 without submitting to a urinalysis.  The Court's ruling is limited to the specific relief sought in Taylor-Failor's Motion for Temporary Restraining Order,

and does not apply to any other prospective employees or previous applicants for County employment.

IT IS SO ORDERED.

DATED: March 13, 2015 at Honolulu, Hawaiʻi.



Derrick K. Watson
United States District Judge

---

*Rebekah Taylor-Failor v. County of Hawaii*; Civil No. 15-00070 DKW-KSC;
**ORDER GRANTING MOTION FOR TEMPORARY RESTRAINING ORDER**